The next case on our docket this morning is 25-40197, Shaw v. Gillen. Mr. Daniels Good morning, Your Honor. May it please the Court. My name is Harry Daniels, along with myself, Chance Lynch, and Demetri Hart-Walkers. We represent the appellant, Chris Shaw, in this matter. Your Honor, we appeal the district court's decision in this case in granting Officer Gillen qualified immunity when we believe he used excessive force when he body slammed Mr. Shaw, who was restraining handcuffs behind his back, surrounded by multiple detention officers in a secure facility that resulted in Mr. Shaw's necks being fractured and resulted in permanent paralysis from the chest down. And I know the district court pointed to a couple of things dealing with Heck v. Humphrey. Your Honor, I think the main focus this morning that we will deal with the Heck v. Humphrey issue is the objective, objective, unreasonable use of force by Mr. Gillen in this matter. Your Honor, the first thing we need to establish is whether the law is clearly established particularly as relates to the facts in this case. And I know that no case is similar, but the Fifth Circuit has established that when a prisoner has his hands handcuffed behind their back. I'm sorry, what's your argument at Heck v. Humphrey? I said that I know we have the Heck v. Humphrey issue. Why? We can deal with the Heck v. Humphrey. I'm sorry? Yeah, I just wondered what you're arguing about there. Well, my issue with Heck v. Humphrey doesn't apply here. And I think one of the main things with Heck v. Humphrey is the issue is whether you can have a conviction that's separate and distinct from the excessive use of force. The videos in this matter was presented to the courts. In fact, I think the district court hung on a second amendment complaint as to whether the appellant, in this case, Mr. Shaw, pled that he was innocent. We briefed that within our, we addressed that issue within our brief. However, the case that was referenced to I think was Aqua v. Cooper, I think I'm saying it correct. That case dealt at a motion to dismiss stage. So the only thing that court can deal with was the complaint at issue. That's the only thing they can deal with, the plea, the complaint and the response by the motion dismissed by the defendants. On the Heck issue, if he has pled guilty and you're not contesting the conviction based on his guilty plea of an assault of a peace officer, there's a particular statute in Texas, the assault of a peace officer statute. And one of the elements is that the officer, as I understand it, the officer was acting lawfully. So why is your claim not an express refutation of that element, that the officer was acting lawfully? Can an officer act lawfully but still commit a constitutional violation of applying excessive force? Well, I think that officers can act in the capacity of their law enforcement capacity, but any excessive force would be deemed unlawful because that would be a violation of law enforcement. Okay, but then we meet ourselves, you understand the problem, we meet ourselves back at the Texas assault on a peace officer statute, which is not being attacked here. His conviction is what it is. His conviction is what it is. But this, what we're talking about, we're talking about a simple assault on a peace officer. The reason why it's a felonious assault, because it's a public servant. If it was not a public servant and it's a pastor, this would be a misdemeanor. What is your best case for us to treat this as a civil Section 1983 claim that should not be precluded by the confession of an element of a criminal offense? I understand that, that's what my appreciation is, that's what heck is all about. That's correct, Judge. But maybe there's a case that you can cite to us that makes that distinction. Well, I think when you have a Bush versus Strange case, as well as a 2008 case, Bolling versus Burton. I wrote that. In that case, Bolling versus Burton, the court held that a plaintiff's sense of force claim was not barred by heck, even though the conviction of a simple assault on an officer. The court reasoned that the plaintiff admitted that assault, but alleged that the officer's response was disproportionate. That is exactly what we allege. We acknowledge that Mr. Shaw committed an assault. He admitted in his deposition he pleaded guilty and he committed an assault. But that force still could be disproportionate as to the response. So we're talking about the allegation, not an allegation, but Mr. Shaw admitting that he raised his leg up and it struck Officer Gilliam. But in response to that, if we look at the totality of the circumstances that we talked about- He wasn't just raising his leg, he was violently resisting all the officers. It took three of them to take him down. You can see it from every angle in the video. Well, in the video, it looked like Officer Gilliam was- And the district court went by the complaint allegations, I'm innocent, I didn't do anything wrong, basically was the flavor of the complaint allegations, totally inconsistent with his guilty plea. But then the district court also said, and you can look at the videos and see what was going on. Well, I think we looked at the video, and I think when we looked at the video, it was objective and reasonable, and we looked at the keys and factors, and we were talking about the 14th Amendment, and we were talking about proportionate of the force used. The video shows that Mr. Shaw, at some point, literally kicked the officer, raised his leg, kneed the officer- But he's yelling, he's screaming obscenities at them, he's charging at them with all his force. Well, I don't know if he's actually charging with them all his force. I think the video- I've seen the videos, you can see what he's doing. I think the video would speak for itself, but I think- It does. When you look at the video, I think somebody can look at the video and say, you're looking at Mr. Shaw, who's under the influence of some type of drugs, alcohol, whatever the case may be, but at the same time, at the time, at the moment in which Officer Gilligan used force, that we're alleging the force he used that was excessive, that was not the case. In fact, in this court, we've already talked about people, detainees, who are in handcuffs, and you have to look at an objective and reasonable standard, and when you're talking about the force that's used, this court have already determined any force that's used that carries with it substantial injury or death constitutes as deadly force. So, the position is, would Officer Gilligan be able to use deadly force against Mr. Shaw in this incident? And the answer would be no, because you got to look at what constitutes deadly force. You have to look at the injury. It's undisputed, and I think the defendants, the police expert, it's undisputed that Mr. Shaw is a quadriplegic this day, as a result of his next neck being broke, and when you look at the facts as to whether the force of Officer Gilligan, could that be constituted as deadly force, and you look at the totality of the circumstances, Warren v. Felix, totality of the circumstances. But the only way you get here is if this is a discrete event that comes after the conduct to which he pled the officer was acting lawfully. The district court says, the video, it just shows it's one incident. It's one continuous resisting arrest, and that's what the video shows. So, basically, he pled that the officer was acting lawfully as to all of it. Well, you have a, I think we talked about a temporal distinction, and at some point when Mr. Shaw assaults Officer Gilligan, you talk about an eight-second lapse from where Officer Gilligan throws whatever merchandise he have, whatever items he have, returned back to these officers, three detention officers, who at that time, there's no striking by Mr. Shaw, there's no continuous fighting. He may be belligerent, but Officer Gilligan pulls, and we showed in a video where he snatches Mr. Shaw away from these officers, in turn, body slams him over, dropping him on his head while he's in handcuffs. But even if you're talking about a continuous resistance, the response has to still be proportionate to the resistance. When you look at this case, I believe this case is an epitome of a use of force, a sense of use of force, particularly when you have somebody in a secured area, a closed environment, multiple officers, who the officers already know is ingested under the influence of alcohols and drugs, takes a position to strip this person away from other officers, slams him, in which Officer Gilligan denied that he in fact slammed him, or the fact that he even choked him at some point. We presented that video in the district court, and he addressed that issue prior to the assault of Mr. Shaw, of Officer Gilligan, that took place. There was no address, and we addressed it in our brief. So when you look at this video, and objectively look at this video, and the law that's already, that's been decided in this court, particularly deadly force, what constitutes deadly force? What can a prisoner, is it clearly a prisoner of hands who handcuffed behind the back? And I think that's very important. That's a very important fact, to be honest, because we're talking, we're not talking about a person having his hands in the front where he can possibly brace himself when he's flipped over. He's completely, his hands behind his back. So the only thing that struck this ground first, in which you see in the video, is his head, is his head that resulted in his neck being fractured. So when you look at the totality, absolutely, could an officer act lawfully in using force, but you also had to take consideration that a person, an inmate, is under the control and custody of that officer, and they have to make sure the force used objectively is not excessive. And when you have a person in the position that Mr. Shaw was in, completely, regardless of the cursing, being belligerent, in the move, in the technique that was utilized, that roster level of being excessive, and clearly, the excessiveness that we believe resulted, well, obviously, believed in the, resulted in the paralysis of Mr. Shaw. We pointed to, and I think one of the things, main things that we pointed to here in our arguments, when we look at the Kingsley factors, we're doing the 14th Amendment, we're not, the Brown v. Conner, the relationship between the need of force use, that's a first factor. And we're talking about a situation where, yeah, with knowledge, he acknowledged that he kicked him. He pled guilty to it. The district court says one continuous nature as such that gives an officer right to respond. We agree that an officer can use force to respond. But the issue is, is that force objectively unreasonable under the Constitution, under the Fifth Circuit? In the Fifth Circuit, not just in the Gomez-Chandler case, the Fifth Circuit has determined that it's clearly established that forcing against a pretrial detainee is excessive and violates the Fourth Amendment when the force was objectively unreasonable. And when you look at the video, as well, it is a jury question, whether it is objectively unreasonable here. And even Officer Gillian himself, he says he didn't slam him. He said he didn't choke him, he didn't slam him. He, in fact, says the only reason he fell down, because their feet got tangled up. Ask his courts to look at that video. There's no tangling of the feet at all. This was a hip snatch, grabbed him by the neck and body slammed him over on that hard concrete floor. And I know the intent of the officer, not really particularly looked at, but I think when you look at this case and you look at when they went to the hospital and they asked the question, did Mr. Shaw lose consciousness? Officer Gillian said, no, he didn't lose consciousness, which was a lie. Then we asked the question of their position. Why didn't you tell the medical staff that he lost consciousness? Maybe they could help him better and perform better medical care and treatment for Mr. Shaw. He said he did not want the medical people to launch an investigation on him. All right, some type of investigation. And I think that in the totality, when you're looking at this case, particularly when you're looking at this case, who you're dealing with, you're dealing with a person that's clearly not in a right state of mind because Officer Gillian took him to the emergency room, to the hospital to get clearance. He comes in, he said all types of things. I agree with you, Judge Wilson, he said all types of crazy things. But at the same time, just because he's saying those things, and I understand the fact that he engaged in a committed assault on Officer Gillian, that assault does not rise to the level where Officer Gillian can use deadly force that we believe that's been interpreted by this court based on the injuries and the type of force that we use. I have four minutes remaining. I can reserve for a photo. Of course, I know there's questions. Thank you. Thank you, counsel. Good morning. May it please the court. Counsel, the trial court correctly granted summary judgment and dismissed Mr. Shaw's 1983 complaint for excessive force as it was barred by Heck v. Humphrey. Additionally, if necessary, Officer Gillian's motion for summary judgment should have been granted as he was entitled to qualified immunity. The court did not rule on that. Is that correct? That is correct, Your Honor. But under some of the case law here, if the court were to find that Heck v. Humphrey didn't apply, for judicial economy they can consider the qualified immunity. My name is Alex Stelly and with my partner, Mr. Blair Clark, we have the honor of representing Beaumont Police Officer James Gillian. Officer Gillian is a 10-year veteran of the Beaumont Police Department and has been in law enforcement since 2009. What were the facts that he pled guilty to? Well, as the court is well aware and as the court has already noted, this was under assault of a public servant, which is Texas Penal Code 22.01b1, where he received four years deferred adjudication. What he would essentially plead guilty to is that the complainant was a public servant, the actor knew that the complainant was a public servant, the complainant was discharging an official duty when he was assaulted, and the official duty was being discharged lawfully. Those are the elements under Quero v. State of assault of a public servant. Who did they identify who he assaulted? In this particular case, they identified Mr. Officer Gillian as the person who Mr. Shaw assaulted. So, as this court has already discussed, this case basically turns on two items under Heck v. Humphrey. First, it would be the fact that in his pleadings, in his second amended pleading, second amended complaint, he said things such as he was completely restrained, he was securely detained, that he made no efforts to assault these police officers. Now, counsel makes a point that this is a motion for summary judgment rather than a motion to dismiss. But in this particular case, Mr. Shaw provided no controverting testimony in his deposition because he doesn't remember this incident at all. And so what we have is essentially his pleading saying, well, I didn't do anything wrong. And that's exactly what, in an unpublished opinion by this court, Whatley v. Coffman, which also dealt with the Beaumont Police Department, says in his complaint there are inherently inconsistent allegations to the conviction. His complaint did not allege that he was intentionally or knowingly threatened by the officer of Emily Bonnelly Harm or that he was protecting himself from any use of force, that this use of force occurred after he had ceased his threatening behavior, or that the officer's use of force greater than was required for his rest. In this particular case, the video evidence, which is part of this record by both the appellee and the appellant, it shows that this was one continual situation. This was one continual 30-second event from when he walks into the Jefferson County Correctional Facility. Well, continual or not, your hands are behind your back. Yes, ma'am. And someone takes you to the ground. Does that raise a fact question about excessiveness? No, Your Honor, because Officer Gillen didn't try to take Mr. Shaw to the ground. What happened here in the video clearly shows, especially the video that's the overhead angle, is that Mr. Shaw was lunging forward off of the wall. When Officer Gillen tried to catch him, they both fell forward. The correctional officers and all would say that their feet did get tangled and they fell forward. It was the forward momentum of Mr. Shaw that brought them to the ground. Well, it didn't look like a trip to me. I mean, it looked like they were taking him down. No, Your Honor. Maybe I'll have to watch it again. Yeah, if you look closely at the feet of the individuals, they did get tangled. Mr. Shaw is forcing his way through Officer Gillen. Now, I remember seeing that, and you can see it from the overhead angle as well as the, I guess, the body cam. Yes, Your Honor. There was another angle that was at level. It was called the distant angle, and that's the one that shows kind of further down. And if you look closely, you can see that their feet do get tangled. What you can also see is Officer Gillen has already, I'm sorry, Mr. Shaw has already brought himself past Officer Gillen, and you can see Officer Gillen just trying to hold on to him. Well, they're struggling with him. Yes, Your Honor, all of these officers. There were four officers there, none of which have been able to gain control of Mr. Shaw during this entire time. When did the assault happen? If you watch the video, you can kind of see when he picks up both his knees and his feet. Is it the kick? It is the kick and a knee. That's before they take him down or they trip and fall? Yes, Your Honor. It is before they trip and fall, and it's right before he throws the things that are in his left hand so that he can try to use both hands to restrain himself. But can't that be a discrete event? It is not a discrete event because, again, what we're talking about, the discrete events that we've seen in the case law is when it's completely separate. The resistance has stopped. Well, but we assess excessive force almost second by second. I mean, in one minute it could be non-excessive and it becomes excessive because the defendant or the suspect stops resisting or they get him restrained in handcuffs. So are we to go frame by frame? How are we supposed to determine the discrete event? Even if you look at the records, I think it's at 1003, which is you can take frame by frame. You can see that Mr. Shaw never stopped resisting. In the case cited by the appellant, Bush v. Shaw. Never stopped resisting, but that's a little bit different question, isn't it, from whether this is a discrete event going down to the ground from the assault, the kick? It may be a discrete event from the kick, but it doesn't go against the... Isn't that what we're looking at? No, Your Honor, because one of the elements of the assault would have been that he acted unlawfully, and this is one event. We've got a case, with due respect. If I recall the facts correctly, a woman had assaulted the police officer. He put her in handcuffs, her hands were out, then he allegedly slammed her head into the hood of a car, broke her front teeth. Now, that was not barred by heck. Well, that's correct, Your Honor. That's the Bush v. Strain case, and in that particular case, what they found was that she had stopped resisting and that it was then only after she had stopped resisting that he put her head into the back windshield. But you still... Excessive force can be excessive, even while you're resisting. Deadly force, for example, might be uncalled for in certain resisting situations. Your Honor, in this particular case, there was no deadly force used. It was only nonlethal force. It's a continuum. In other words, his allegations are that he was pulled away and slammed to the ground with his hands behind his back. Your Honor, if you look at our briefing on footnotes five and six, we show several cases in which prisoners or arrestees, pretrial detainee, had their hands cuffed behind their backs, were taken to the ground, but there wasn't excessive force found. In each case in which there has been a distinct action, that action usually took place somewhere else. So, for instance, I believe it was in the Ballard v. Burton case. Well, in the Ballard v. Burton case that they cite, the problem with that case is the excessive force was done by an officer other than the officer in which the excessive force was... I'm sorry, that the assault had taken place on. So the Ballard v. Burton case is distinguishable from this case because in this particular case, it was Officer Gillen who had had the assault on him. There's another case in which it was in a prison situation where they went into an... I think it was the Akroen case, where they went into his prison cell and tried to get him to comply with verbal commands. He did not. Well, they showed that that force that was used by putting a spray of OC spray into his cell was not excessive. However, the distinct and contemporally or temporally distinct action took place in the lobby or in, I think it was the library, and that was completely separate, not only from his cell, but in a time manner. In this particular case, there was no distinction in time. If it was, it was a split second. And these officers are, as this court has always held, are looking to do things in split second decisions. And this is what exactly happened here in this case. They were trying to get Mr. Shaw to comply. He never complied. Officer Gillen used measured and ascending techniques to try to get him to comply. He went from verbal, even when he was outside in the sally port. Now, in the sally port where they fell, the court has already found that Mr. Shaw has abandoned those claims. But what you see is Mr. Shaw continued, started from there where he was non-compliant and he was resistive. And what do we see from Officer Gillen? He was very calm. He told him, please stop, quit. We're past that now. And they went to the ground there. That was where the correctional officer came out to help. The same thing happened as they go inside. Officer Gillen tells him, stop, quit. There are other prisoners and there's other medical staff around. So there was a threat to other people that could have been assaulted or could have been hurt by Mr. Shaw's continued resistive behavior. At no point, as in all of the cases that had showed distinction or temporal or conceptual distinct acts, at no point did they get him under control or did he stop resisting or that they went to another location or that even after he was hit, because he came in handcuffed, but it didn't prevent him from trying to resist and try to get away in the sally port and again inside the jail because that's what he appeared to be doing when he comes off the wall. He's trying to escape. He's trying to get to other people in the prison. And not only does the correctional officers, but Officer Gillen, who had not yet given full custody to the correctional officers, be allowed to use reasonable force to gain control of Mr. Shaw. In this particular case, that reasonable force was to take him to the ground so that he could maintain control. Even when Officer Gillen took him to the ground or when they fell to the ground, you hear Officer Gillen say, stay down. He wasn't amped up. He was trying to gain control of a combative pretrial detainee or arrestee. That's what we have in this case. It is not a distinct, it's not temporal or conceptual distinct action between the assault on a public servant and his excessive force claim. We have the problem that we have with the allegations in his complaint that he says he was wholly innocent and did nothing wrong here. Clearly, as Judge Crone showed or stated in her opinion, that was not what the video showed. We also have the problem, as has already been pointed out, that this would be against the very nature of assault of a peace officer because, as the court has already pointed out, he had to plead guilty to Officer Gillen having lawful or executing lawful duties. His excessive force claim in this particular case would be against that. So we believe that the court or the court did correctly hold that this claim for excessive force under 1983 was borrowed by Hecht versus Humphrey. If we get to the excessive force claim past Hecht versus Humphrey, Officer Gillen is entitled to qualified immunity. He was trying to control a combative pretrial detainee. He was making split-second decisions, and this is exactly what qualified immunity is for. The force that's been in our brief that shows these different cases which arrestees or pretrial detainees are handcuffed and are having to take to the ground because they continue to resist, in Gomez, which they cite, he wasn't resisting. They cite other cases in which the inmate or the arrestee isn't resisting. That's not the case here. At all times, Mr. Shaw was resisting arrest or resisting, not arrest, but resisting control until he went to the ground. It is clear from the video that their feet did get tangled and they went down. So we believe that Officer Gillen used not only reasonable force, but the force that was necessary and appropriate under the circumstances. If that's the case, there's no constitutional violation. As Graham V. Connors stated, you have to look at reasonableness with these split-second decisions and that these circumstances are often tense, uncertain, and rapidly evolving. And so you have to look at the amount of force needed in each particular circumstance. Clearly, it was only this force that could be used to gain control of Mr. Shaw. He had already used verbal commands. Officer Gillen, along with three other correctional officers, had tried to use physical force just trying to hold him up. They continue to talk about chokeholds and they continue to talk about that he slammed him to the floor. That's not what was going on here. As they were continually trying to place their hands to control Mr. Shaw, at some points it got around his neck area. But it wasn't because they were trying to restrict his airflow. It wasn't something that was done for any length of time. It was momentary and it was because of Mr. Shaw's movements and his restrictive behavior or his resistive behavior. So in this case, what we're seeing is it wasn't until they fall to the ground that I believe that there's one photo that's shown by the appellant in the record in which his arm gets around his neck. But again, that was unintentional and it was only momentary. This was not a chokehold. This was not a hip toss. A hip toss or some type of maneuver to get him to the ground would have been something that Officer Gillen was trying to do to control him to the ground. The video clearly shows that it was Officer Gillen who first hit the floor. They were both falling out of control, Officer Gillen along with Mr. Shaw. Now, Officer Gillen testified he was trying to control Mr. Shaw, but he was unable to do so. And unfortunately, Mr. Shaw hit his head and is today paralyzed. Now, this idea that Officer Shaw said, Officer Gillen said, well, I didn't tell them at the hospital after all of these events that he lost consciousness because I didn't want him to launch an investigation. That's just not the testimony in this case. Moreover, everything that happened after this incident falls outside of what the court should be looking at for Heck v. Humphrey and for qualified immunity. That's why we sit here today and we ask this court to affirm Judge Crone's decision that this 1983 case was barred by Heck v. Humphrey and if not, that this court finds that Officer Gillen was entitled to qualified immunity. Unless there's other questions from the court, I'll yield my three minutes that I have left. Thank you, counsel. Thank you. Your Honor, as in a brief rebuttal response, there's no evidence in the record about tangling of feet, particularly from any officers except Officer Gillen. In fact, if you look at the video that's part of the record, we pointed to it and it's record 87, the distant angle camera between 56 mark and 59. You see at no time was there any tangling. The reason why they asserted tangling, because they need the tangling to justify his act of body slamming him on his head. Your Honor, the thing that I want to point to in Heck v. Humphrey, the Fifth Circuit has repeatedly held that the application of Heck to assess the court's claim is not categorical, but requires a fact-intensive analysis. The central inquiry is whether a judgment in favor of the plaintiff on the excessive force claim would necessarily imply the invalidity of assault conviction. In this case, it would not. The apologies keep talking about using the word resistance, resistance. And this court pointed out that you can even have resistance and excessive force, because you got to see the level of the proportionate use of the force. You can have a person that's resistant. You can pull a gun out and shoot him or tase him for five minutes just because they're resistant, because you have to look at objective reason under the circumstances. And let me say this. Even if Mr. Shaw's resistance authorized the use of substantial force, which was necessary for his conviction of assault of a public servant, Mr. Shaw can still conceivably show that the force used was greater than substantial, objective, unreasonable, and excessive force under the circumstances. These cases that the appellee talks about, where at the time the person was resistant, but we're talking about a case where a person is handcuffed behind their back, restrained behind their back. And we're talking about the manner in which the officer used, the technique in which he used. There's no tangling of the feet. There's allegations that he came and he was stumbling and they shuffled. No, you can see from the video that he grabbed him by the neck, under his arm, and flipped him over. And you can see Mr. Shaw's feet come up in the air. This is not a mere fall into the ground. With force striking his head, breaking his neck, it rendered him a quadriplegic. So the objective is reasonable. But also, one of the issues I think that we definitely need to point to is, when you're talking about heck, and we're talking about where cases, or what type of facts for almost de facto bar on the heck. We're talking about cases of aggravated assault against law enforcement. Here's a shootout or an act where a defendant in a case is using some type of force or assault that can rise to the level of serious injury or death for the law enforcement. So yeah, they can respond accordingly. This case, we're talking about a simple assault. The only reason it's felonious is because who the person is. In this case, in this court, in Bush, it is very clear that a person assault on an officer can exist, can exist, and a sense of force also can exist. We're going back and forth when we're talking about what the video shows and what happened. Let me just ask you this. Do you think the video is ambiguous, or should we rely on the video? I think the video within itself speaks to exactly what happened. I think that the argument is which Mr. Officer Gillian alleged that his feet got tangled up and things like that. I think there's something the courts definitely can look at. You're usually talking about Scott versus Harris. We're talking about the video discredit, the testimony. Absolutely. It's the inverse here. The video absolutely discredits Officer Gillian's account of what happened. Feet being tangled up. They fell to the ground and things like that. Yes. So, Your Honor, I see I'm out of time. I'm going to ask this court to reverse the district court and remand this case back down. Thank you.